IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGEL SANTIAGO, | : | |
| Claimant, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| MICHAEL J. ASTRUE, Commissioner | : | |
| of Social Security, | : | |
| Defendant. | : | No. 11-3650 |

**MEMORANDUM ON REQUEST FOR REVIEW**

**Baylson, J.**                                                                                            **March 28, 2012**

      Claimant Angel Santiago ("Santiago") seeks judicial review of the decision by the Commissioner of the Social Security Administration ("the Commissioner") denying his application for Social Security Disability Insurance Benefits ("SSDI") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33, 1381-83(f).  After careful consideration of all the relevant facts and circumstances, and for the reasons explained below, Santiago's request for review of the February 19, 2010 decision of the Administrative Law Judge ("ALJ") is DENIED.

**I.**     **Background and Procedural History**

      On December 1, 2008 and December 23, 2008, Santiago filed applications for SSDI and SSI, respectively. [Tr. 23]  In both applications he alleged disability beginning on October 31, 2008 due to diabetes, high blood pressure, back pain, high cholesterol, and insomnia. [Tr. 23, 129].  Santiago was 46 years old on the date he alleges he became disabled and has significant past work experience as an assembler and a machine operator. [Tr. 130, 136]

The state agency denied Santiago's application for benefits. [Tr. 69, 74]  At Santiago's request, an administrative hearing regarding his application for benefits was held on January 14, 2010 before ALJ Paula Garrety.  At the hearing, Santiago was represented by counsel and testified on his own behalf; a vocational expert ("VE") also testified. [Tr. 33]

On February 19, 2010, ALJ Garrety issued an unfavorable decision regarding Santiago's application.  ALJ Garrety determined that Santiago suffered from the severe impairments of diabetes mellitus with neuropathy and depression, but his impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 26]  The ALJ also determined, for purposes of finding Santiago's residual functional capacity ("RFC"), that he could communicate in English within the meaning of 20 C.F.R. §§ 404.1564 and 416.964. [Tr. 27-31]  Finally, the ALJ concluded, pursuant to the VE's testimony, that Santiago was capable of performing a range of light unskilled and sedentary unskilled work, including work as a machine tender and assembler. [Tr. 31]

Santiago sought review of the ALJ's decision before the Appeals Council.  On March 31, 2011, the Appeals Council denied his appeal. [Tr. 1-9]  Santiago filed a Complaint requesting review of the Commissioner's decision in this Court on August 17, 2011. [ECF No. 3]  The parties completed their briefing on February 13, 2012. [ECF Nos. 8, 11, 12]

II.     **Legal Standards**

    A.     **Jurisdiction**

The Social Security Act provides for judicial review by this Court of any "final decision of the Commissioner of Social Security" in a disability proceeding.  42 U.S.C. §§ 405(g), 1383(c)(3).  A district court may enter a judgment "affirming, modifying, or reversing the

decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id.

### B. Standard of Review

On judicial review of the Commissioner's decision, the Commissioner's findings of fact, "if supported by substantial evidence," are conclusive. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 633 (3d Cir. 2010) (internal quotation marks omitted). It is a standard requiring "less than a preponderance of the evidence but more than a mere scintilla." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

In reviewing the record for substantial evidence, however, the Court must "not weigh the evidence or substitute [its own] conclusions for those of the fact finder." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted).

The Court's review of the legal standards applied by the ALJ is plenary. See Allen v. Barnhart, 417 F.3d 396, 398 (3d Cir. 2005).

### C. Disability Claims Analysis

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has promulgated regulations requiring a five-step sequential analysis to determine the eligibility of claimants for benefits. First, if the claimant is engaged in substantial gainful activity, the claim is denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, if the claimant is not suffering from a severe impairment or combination of impairments that

significantly limits physical or mental ability to do basic work activities, the claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is suffering from severe impairments that meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claim is approved. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claim is not approved under Step 3, the claim will be denied if the claimant retains the RFC to meet the physical and mental demands of his past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). Fifth, if the claimant does not retain the RFC to perform past relevant work and there is no other work in the national economy that the claimant can perform (considering his RFC, age, education, and past relevant work experience), the claim is approved. 20 C.F.R. §§ 404.1520(g), 416.920(g).

### III. Summary of Santiago's Contentions

Santiago challenges the ALJ's decision on multiple grounds. First, Santiago claims that the ALJ failed to evaluate medical evidence in the record demonstrating that he suffers from the additional severe impairments of hypertension, arthritis, skin infections, heart disease, headaches, hearing loss, and vision changes. Second, Santiago claims that the ALJ did not properly determine his RFC because she did not properly credit, inter alia, the opinions of his treating primary care physician, his treating psychiatrist, and his testimony at the administrative hearing. Third, Santiago claims that the VE's testimony cannot constitute substantial evidence for the ALJ's disability determination because the VE's testimony about machine tenders and assemblers was inconsistent with the information contained in the Dictionary of Occupational Titles ("DOT"). Finally, Santiago claims that he is entitled to a favorable disability determination under Rules 201.17 and 202.09 of the Medical-Vocational Guidelines ("Grid

Rules") because, among other things, he is unable to communicate in English.

IV.   Discussion

 A.   **Additional Severe Impairments**

Santiago first argues that he suffers from additional severe impairments that were not properly accounted for by the ALJ, including hypertension, arthritis, skin infections, heart disease, headaches, hearing loss, and vision changes. Under the regulations, an impairment or combination of impairments is "severe" only if it "significantly limits" an individual's physical or mental ability to do basic work activities and "ha[s] lasted or [is] expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509, 404.1520. The claimant bears the burden of proving a severe impairment at step two of the disability analysis. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Here, though Santiago is able to highlight portions of the record that characterize some of his ailments as relatively serious, there is also substantial evidence in the record to support the ALJ's conclusions that the ailments were not severe or did not affect his work abilities for a 12 month period. See Zappala v. Barnhart, 192 Fed. App'x 174, 177 (3d Cir. 2006) (citing Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) ("[T]he possibility that two inconsistent conclusions may be drawn from the evidence contained in the administrative record does not prevent an agency's finding from being supported by substantial evidence.")). The Court briefly analyzes each impairment raised by Santiago below.

 1) Hypertension

The ALJ correctly noted in her decision that Santiago has a history of high blood pressure for which he has been treated with medication. [Tr. 25, 309] The ALJ further concluded,

however, that the hypertension was not "severe" because there was no documentation of any related "persistent symptoms" that would have more than a minimal effect on his work abilities. [Tr. 25]  After an independent review of the record, this Court, like the ALJ, is unable to locate medical evidence specifically linking the hypertension diagnosis to significant physical or mental symptoms.  See Sassone v. Comm'r, 165 Fed. App'x 954, 957 (3d Cir. 2006) (affirming determination that hypertension was not a "severe" impairment where it was mentioned throughout the record but where the claimant could not cite to "any medical report diagnosing him with a condition resulting from [it]," such as "end-organ damage or [other] quantifiable complications").

Rather, the record shows that, for example, Santiago "denie[d] having any chest pain or shortness of breath" when asked about the symptoms of his hypertension by Dr. Nader, the consultative examiner. [Tr. 309]  Nor did Santiago testify before the ALJ that his hypertension negatively affected his capabilities.  The transcript shows only that Santiago stated he suffers from hypertension and receives medicine for it. [Tr. 47]  In these circumstances, the ALJ reasonably concluded that hypertension was not a severe impairment.

2) Arthritis in back, arms, and/or knees

Santiago argues that his arthritis is a severe impairment that prevents him from lifting his arms overhead and affects his ability to walk, contributing to his need for a cane.  The Court will affirm the ALJ's determination on this issue on the basis of the many examples of normal musculoskeletal and neurological evaluations of Santiago's back and extremities, which the government cited in detail at pages 6-7 of its responsive brief and which the Court need not repeat again here.

3) Skin Infections

Santiago argues that the ALJ did not properly account for evidence of his repeated skin infections in the groin area. Santiago may be correct that the ALJ erred in failing to note the skin infections in her opinion. <u>See</u> 20 C.F.R. § 404.1523; <u>but see</u> <u>Hur v. Barnhart</u>, 94 Fed. App'x 130, 133 (3d Cir. 2004) (stating that an ALJ is "not expect[ed] . . . to make reference to <u>every</u> piece of relevant information" in the record). Nevertheless, any such error was harmless, because the Court can find no evidence in the record—and Santiago provides no citations—to support the idea that the skin infections had more than a minimal and brief impact on his physical capabilities. Instead, the record indicates that the skin infections lasted a few days, were treatable, and that Santiago was "doing well" and "well healing" after treatment. [Tr. 263-64, 269] Indeed, during the consultative examination, Santiago did not report any problems related to his skin infections, and his skin at that time "[r]evealed no rashes or xanthomas." [Tr. 310] Similarly, at the hearing before the ALJ, Santiago merely reported that the skin problems "hurt" and were "an infection that I get . . . because of the diabetes," but he did not further elaborate. In these circumstances, the ALJ's failure to discuss the skin infections does not necessitate a remand or other relief.

4) Heart Disease

Santiago's only grounds for claiming that the ALJ should have deemed his heart disease to be a severe impairment is the fact that one hospitalization record suggests he suffered a myocardial infarction in July 2009, though the discharge summary from the same hospitalization did not include that diagnosis. [Tr. 366, 378] Various other vascular or cardiac tests performed on Santiago in 2009 were normal or stable, and Santiago reported at the ALJ hearing that, to his knowledge, he had never had a heart attack. [Tr. 48, 391, 400-01] Accordingly, the Court has no

basis to conclude that the ALJ's decision about Santiago's alleged heart disease lacked substantial evidence.

     5) Headaches

Santiago argues that the ALJ erred when she found that Santiago's headaches were not a severe impairment. This argument is without merit. Although Santiago testified that he experienced headaches that were severe enough to prevent him from working approximately seven days per month, he also testified that the headaches were fully treatable with Tylenol or aspirin at least some of the time. [Tr. 43-44] Moreover, the government accurately notes that the record does not include consistent complaints of headaches: for instance, Santiago denied experiencing headaches when admitted to the emergency room on July 1, 2009 and again on July 2, 2009 [Tr. 368, 377]; he never reported problems with headaches to his treating physician, Dr. Wilson [Tr. 396-414]; and a lengthy health evaluation conducted by Dr. Villaluz and Santiago's individual therapist does not document or diagnose any problems with headaches.[1] [Tr. 286-305] Moreover, Santiago did not claim the headaches contributed to his disability when he first applied for benefits. [Tr. 129]

Although there is competing medical evidence and testimony that Santiago experienced headaches, the ALJ had substantial evidence to find Santiago's description of the severity of his headaches incredible and to determine that the headaches were not a severe impairment.

     6) Hearing Loss and Visual Problems

The Court will affirm the ALJ's determinations regarding Santiago's hearing loss and visual problems principally for the reasons stated in the government's responsive brief. Various

---

[1] The Court notes that the handwriting in a few sections of the lengthy report is illegible.

medical reports, including reports by Santiago's treating physician, indicate that Santiago did not have hearing or visual impairments when using his hearing aid and wearing glasses. [See, e.g., Tr. 398]

      **B.**      **The ALJ's Discussion of the RFC**

Santiago argues that the ALJ did not properly determine his RFC because she did not properly credit the medical opinion evidence and Santiago's testimony about the nature and extent of his functional limitations.

The government responds that the ALJ's written decision was grounded in substantial evidence but, even if it was not, the hypothetical questioning of the VE at the administrative hearing actually included more restrictive limitations than those noted in the written decision. Specifically, the ALJ's RFC, as described in her written decision, provided that Santiago could perform light work that involved 1-2 step tasks and few work changes. [Tr. 27] Light work, as defined by 20 C.F.R. §§ 404.1567(b) and 416.927(b), is work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.

In contrast, at the hearing, the ALJ asked the VE to assume a hypothetical person of Santiago's age, education, and past work experience who could stand and walk for no more than 2 hours in an 8-hour workday, who required the ability to alternate positions when sitting, who could not push or pull with the lower extremities, and who was confined to 1-2 step tasks and few work changes; however, the hypothetical also assumed a person who had no limitations in his ability to lift and carry (which assumes more functional ability in this area than the "light work" designation). [Tr. 55-59] The government contends that, notwithstanding the lifting and carrying discrepancy, any error made by the ALJ in determining the RFC in her written decision

is harmless in light of the VE's testimony about the jobs available to a more functionally limited person of Santiago's age, education, and experience. The Court analyzes these issues in more detail below.

    1) Santiago's Physical Limitations and Language Skills

The opinion evidence about Santiago's physical limitations comes from three sources: an examining but non-treating consultative doctor in April 2009 (Dr. Nader) [Tr. 308-14], a non-examining agency consultant in June 2009 (Heather Masker, of undetermined credentials[2]) [Tr. 335-41], and Santiago's treating physician (Dr. Wilson, who treated Santiago from November 2008 to December 2009) [Tr. 396-98]. The ALJ afforded Dr. Nader's opinion little weight and Dr. Wilson's opinion partial weight while fully crediting Heather Masker's opinion. [Tr. 29]

    As an initial matter, the Court holds that the ALJ had substantial evidence for her decision not to credit Dr. Nader's opinion. In determining the weight, if any, to accord the opinion of a non-controlling medical source, the ALJ considers: (1) the nature of the examining relationship; (2) the supportability of the opinion; (3) the consistency of the opinion with the record as a whole; and (4) the specialization of the source offering the opinion. See Irelan v. Barnhart, 82 Fed. App'x 66, 71 (3d Cir. 2003) (citing 20 C.F.R. §§ 404.1527, 416.927); Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). The ALJ discounted Dr. Nader's assessment because, inter alia, he attributed all of Santiago's limitations to back pain. That conclusion was inconsistent with the notes from his examination as well as with Santiago's other medical records, which do not include any x-rays, MRIs, or other significant

---

[2] The only indication of Masker's credentials is the following letter/number code listed after her name: "LEX K038." [Tr. 339, 341] There is no evidence in the record that explains this code. Notably, the government's responsive brief did not dispute Santiago's assertion that Masker is not a physician.

medical intervention for persistent back pain. [Tr. 313-14]  After an independent review of the record, the Court agrees with the ALJ's analysis.

The Court is troubled, however, by the fact that the ALJ credited a non-examining source of undetermined expertise, Heather Masker, over the opinion of the treating physician, Dr. Wilson.  Though the Commissioner has ruled that "[i]n appropriate circumstances, opinions from [non-examining] State agency medical and psychological consultants . . . may be entitled to a greater weight than the opinions of treating or examining sources," SSR 96-6P, 1996 WL 374180, at *3 (July 2, 1996), Heather Masker's opinion arguably is not "medical" at all; moreover, it does not indicate familiarity with Santiago's full medical history.  Nevertheless, the Court faces a situation in which remand on these grounds would be futile: even if Dr. Wilson's assessment of Santiago's limitations were fully credited, Santiago would not be disabled according to the VE's testimony at the hearing.  The limitations noted by Dr. Wilson were either (1) accounted for in the ALJ's initial hypothetical,[3] or (2) specifically probed by Santiago's attorney and, in response, determined by the VE not to impact the analysis of the relevant jobs available to Santiago in the national economy. [See Tr. 59 [Counsel]: "If you add to the judge's question all those other limits that I've just asked you to consider, is there any impact on the numbers of jobs that [Santiago] might be able to do . . . [?]?  [VE]: "There would be no impact."][4]

---

[3] Notably, although the hypothetical question posed by the ALJ at the hearing did not include one limitation in the ALJ's written description of the RFC—specifically, the hypothetical at the hearing assumed that Santiago had no limitations in his ability to lift and carry—the hypothetical was in fact consistent with Dr. Wilson's treating opinion, which stated that Santiago had no limitations in his ability to lift and carry. [Tr. 396]

[4] Santiago also attacks the ALJ's RFC on the basis that it did not account for his use of a cane.  The Court affirms the ALJ's determination on this issue for substantially the reasons stated

Indeed, for the same reason, Santiago's argument that the ALJ failed to adjust the RFC to reflect his limited ability to speak English does not entitle him to relief. Although the ALJ's written decision determined that Santiago could communicate in English, the hypothetical she posed to the VE at the hearing asked the VE to opine about the availability of jobs for individuals both with and without the ability to speak English. [Tr. 56] The VE then specifically described a number of jobs that met Santiago's other limitations that were jobs he could perform "without the ability to speak the language[.]" [Tr. 57] Accordingly, even if the ALJ lacked substantial evidence for her ruling that Santiago was able to communicate in English, the error was harmless with respect to the ALJ's determination at step 5 of the disability analysis.

Nevertheless, because Santiago's English capabilities are relevant to his argument about application of the Grid Rules, see infra, the Court will proceed to the merits of the language issue. As Santiago asserts in his briefs, his testimony at the administrative hearing and some of the documents in the record are consistent with a finding that he is not able to communicate in English and is fluent only in Spanish. Pet. Br. at 19-20. The Court also agrees with the government, however, that the record contains evidence reflecting that Santiago is able to communicate in English, at least within the meaning of 20 C.F.R. §§ 404.1564 and 416.964. Govt Br. at 26-27. For instance, while Santiago is correct that one medical report states that he speaks only Spanish and that his medical history had to be taken from his wife [Tr. 370], a September 2008 hospital report states exactly the opposite: there was "[n]o language barrier" and the "[h]istory comes from patient." [Tr. 262; see also Tr. 268 (same)] Records from the same

---

in the ALJ's decision: the record does not document that any physician prescribed an assistive device, nor did Santiago's physicians or examiners note that he arrived for office visits using a cane. Thus, the ALJ was not required to credit Santiago's testimony at the hearing regarding the extent of his dependency on a cane.

-12-

hospital visit also reflect that Santiago "[v]erbalizes understanding of after-care instructions . . . and [v]erbalize [sic] understanding of need for follow up[.]" [Tr. 264]

This is the classic situation in which the Court must be mindful that it should "not weigh the evidence or substitute [its own] conclusions for those of the fact finder." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted). The evidence in the record about Santiago's language skills supports two possible conclusions, but the Court must defer to the ALJ's decision in light of the record evidence supporting it. Zappala v. Barnhart, 192 Fed. App'x 174, 177 (3d Cir. 2006) (citing Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (discussing the possibility that an administrative record will contain substantial evidence of two inconsistent conclusions)). This deference is especially due where, as here, the determination partially depends on the ALJ's observations of the claimant's communication skills and credibility during the administrative hearing.

Finally, the Court turns to Santiago's claim that the ALJ "overlook[ed]" Santiago's testimony about pain, especially in his feet. Pet. Br. at 20. In fact, the ALJ noted in her written decision that Santiago had testified that he was limited to walking 2-3 blocks and standing for 25-30 minutes due to the pain in his feet. [Tr. 28] The ALJ then found that his medically determinable impairments would reasonably be expected to cause him pain, but she did not credit the degree of intensity, persistence and limiting effects of the pain. [Tr. 28]

It is certainly true, as Santiago emphasizes, that an ALJ is not free to disregard a patient's subjective complaints of pain. See, e.g., Green v. Schweiker, 749 F.2d 1066, 1070 (3d Cir. 1984). Nevertheless, the ALJ was permitted to consider the fact that, in a case with voluminous medical records documenting the claimant's symptoms—including a number of records created shortly before the administrative hearing—only Dr. Nader's report comes anywhere close to

documenting pain <u>of the severity</u> testified to by Santiago. Even Dr. Nader's report, however, noted that Santiago's pain was "controlled by analgesic, Tylenol" and that Santiago "walked unassisted." [Tr. 309-10] More importantly, the Court has already explained <u>supra</u> that the ALJ was not required to credit Dr. Nader's opinion. Accordingly, in view of the Court's independent review of the medical evidence regarding Santiago's pain, the Court concludes that the ALJ's decision not to credit the full extent of Santiago's testimony about pain was supported by substantial evidence.

      2) Santiago's Mental Limitations

The opinion evidence about Santiago's mental limitations comes from a non-examining agency psychologist in June 2009 (Dr. Cunningham) [Tr. 319-34] and a treating psychiatrist (Dr. Villaluz, who treated Santiago from December 2008 to January 2010) [Tr. 342-43]. The ALJ afforded substantial weight to Dr. Cunningham's opinion, except insofar as it indicated that Santiago had moderate difficulties in maintaining social functioning, which the ALJ described as unsupported by the record and inconsistent with Santiago's own testimony. [Tr. 29-30] The ALJ afforded little to no weight to the opinion of Dr. Villaluz, because her opinion of extreme functional limitations was inconsistent with Santiago's contemporaneous mental health records and the nature of his prescribed treatment. [Tr. 30]

As already stated above, the Court should carefully consider any situation in which the opinion of a non-examining source is weighed over that of a treating physician. The opinion of a treating physician should be given great weight where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record. <u>Smith v. Astrue</u>, 359 Fed. App'x 313, 316 (3d Cir. 2009); <u>see also</u> 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An ALJ "may reject a treating

-14-

physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

Here, Dr. Villaluz rendered her opinion that Santiago suffers from a number of severe functional limitations on a checklist form with two cursory sentences stating—to the extent the handwriting was legible—that Santiago continued to present with symptoms of depression and to exhibit poor judgment. [Tr. 342-43] Dr. Villaluz's records provide only the slightest of support for her disability opinion: in her notations about Santiago between December 2008 and January 2010, she repeatedly checkmarked that he exhibited "poor" insight and judgment, but in no instance did she explain the basis for that determination.[5] [See, e.g.,Tr. 418, 430, 440] Indeed, apart from these checkmarks, her reports about Santiago's mental health were as described by the ALJ: fairly unremarkable except for findings of depressed/anxious mood.[6] To give one example, on December 21, 2009, Dr. Villaluz checkmarked that Santiago had "poor" insight and judgment but also that he was "appropriately dressed and groomed," exhibited a "cooperative" attitude, was oriented to person, place and time, and exhibited a "coherent" thought process. [Tr. 418]

What is more, the copious notes taken by Santiago's individual therapist (who treated Santiago in conjunction with Dr. Villaluz) over the course of 20+ therapy sessions contradict Dr.

---

[5] Similarly, Dr. Villaluz assigned Santiago a Global Assessment of Functioning (GAF) score of 48 after her first examination with him, but she did not explain her reasons for the score. [Tr. 304]

[6] Santiago also reported upon intake that he experienced auditory hallucinations. Dr. Villaluz's reports continued to reflect marks in the blanks beside "delusions" and "hallucinations" throughout Santiago's treatment; however, neither Dr. Villaluz's notes nor Santiago's therapist's notes described continuing problems with hallucinations, Dr. Villaluz did not justify her mental disability assessment on that basis, and Santiago does not challenge the ALJ's disability decision on that basis.

Villaluz's findings of severe mental limitations. The therapist's records reflect generally unremarkable mental health except with respect to feelings of depression, frustration, and/or anxiety related to family conflict and economic/financial struggles. [See, e.g., Tr. 422-23, 431-32] Furthermore, as the ALJ observed in her written decision, a substantial majority of the therapist's session reports state that Santiago was making "moderate progress" with treatment, and there is no indication that treatment was ever prescribed to address problems as severe as those indicated in Dr. Villaluz's opinion. [See, e.g., Tr. 431-39]

In conclusion, in light of the relatively cursory and checklist format of Dr. Villaluz's opinion, the sparsity of the support for her conclusions in her own records, and the contradictory nature of the medical evidence from Santiago's treating therapist, the Court holds that the ALJ was not required to attribute more than "little to no weight" to Dr. Villaluz's opinion of Santiago's mental limitations.

Turning now to the question of Dr. Cunningham's consultative opinion, the Court agrees with the ALJ's reasoning that, although Dr. Cunningham did not examine Santiago, the conclusions in his report were generally consistent with the medical record. The ALJ was therefore permitted to accord the opinion "substantial weight."[7] [Tr. 29-30] The ALJ was further permitted to discount the portion of Dr. Cunningham's opinion finding that Santiago experienced "moderate" social difficulties in favor of a determination that his social difficulties were only "mild" because, inter alia, Dr. Cunningham's opinion did not provide any explanation for this

---

[7] Santiago's assertion in his reply brief that "none of the claimant's mental health records were referenced by [Dr. Cunningham]" is misleading. Pet. Reply Br. at 6. In Part IV of the Psychiatric Review Technique form that Dr. Cunningham filled out on the same day that he completed the Mental RFC Assessment form, he expressly discusses certain mental health records. [See, e.g., Tr. 331 ("[Santiago] began psych outpt tx on 1/29/09. Records in file indicate 1 follow up session in 2/09. . . . [n]o evidence of si/hi was noted in psych eval or in tx notes.")]

determination [Tr. 329, 331], Santiago specifically testified at the hearing that he "get[s] along well with everybody" [Tr. 50], and a January 2009 report completed by Santiago's therapist states that Santiago has "good relationships with other people" [Tr. 297].

Santiago further contends that, even if the ALJ was permitted to weigh Dr. Cunningham's report over Dr. Villaluz's report, the hypothetical the ALJ presented to the VE should have reflected Dr. Cunningham's opinion that Santiago was "moderately limited" in maintaining attention and concentration for extended periods.[8]  Santiago describes this limitation as "not mentioned at all in the decision."  Pet. Br. at 17.

This characterization of the ALJ's decision is inaccurate.  Page 26 of the ALJ's decision specifically states: "[I]t is found that the claimant suffers from . . . moderate difficulties maintaining concentration, persistence or pace."  Page 29 further acknowledges: "[C]laimant may be preoccupied by his problems, which may interfere with his ability to maintain concentration, [though] his overall level of functioning is not as diminished as alleged."  But more importantly, while the ALJ did not explicitly discuss Santiago's attention and concentration with the VE—nor did Santiago's attorney inquire about those limitations with the VE when provided the opportunity to do so—the ALJ's RFC and hypothetical involving "1-2 step tasks and few work changes" adequately accounted for the limitation.  See, e.g, McDonald v. Astrue, 293 Fed. App'x 941, 946-47 (3d Cir. 208) (holding that a VE hypothetical that limited an individual to "simple, routine tasks . . . that [ ] avoid noise extremes and bright or sudden light changes" adequately incorporated a "moderate limitation" in concentration, persistence and pace).  Accordingly, the ALJ did not err in her treatment of Dr. Cunningham's opinion, or to the

---

[8] The Court notes that Santiago does not contend that Dr. Cunningham's report suggests a moderate limitation in pace, only a moderate limitation in attention and concentration.

extent she erred by failing to explicitly discuss the impact of the attention/concentration limitation in her decision-making at step 5, the error was harmless.

      C.      **Inconsistencies in the VE's Testimony**

Santiago claims that the VE's testimony did not provide the ALJ with substantial evidence for her determination at step 5 because the VE's description of the jobs of machine tender and assembler were inconsistent with the information contained within the Dictionary of Occupational Titles. This argument is without merit. This case is unlike, for instance, Boone v. Barnhart, 353 F.3d 203 (3d Cir. 2003), in which the claimant "[could] [ ]not perform any of the occupations identified" and the VE committed a multitude of errors, including misidentification of the skill level of an occupation, identification of occupations with skill levels beyond that of the claimant, and failure to explain whether the occupational base has been discounted to reflect that the claimant could only perform some of the usual tasks of an occupation. Id. at 207-08.

Here, the VE's testimony and the DOT description of the machine tender position are consistent in the important respects of skill and strength level; moreover, even assuming arguendo that the VE's testimony about the machine tender position was materially inconsistent, Santiago does not explain how or why his impairments as identified in the ALJ's hypothetical[9] were inconsistent with the VE's testimony that he could perform the sedentary jobs of assembler (i.e., "final assembler," see Govt Br. at 29 n.11) and inspector/examiner/checker. Accordingly, in these circumstances, the ALJ's determination that Santiago was not disabled did not lack substantial evidence. See, e.g., Jones v. Barnhart, 364 F.3d 501, 506 n.6 (3d Cir. 2004) ("[T]his Court has not adopted a general rule that an unexplained conflict between a VE's testimony and

---

[9] Again, the Court notes that the ALJ's hypothetical contained more restrictions than the RFC described in her written decision.

the DOT necessarily requires reversal.") (internal quotation marks and alteration omitted).

### D. Application of the Grid Rules

Santiago asserts that he is entitled to a favorable disability determination under Rules 201.17 or 202.09 of the Medical-Vocational Guidelines ("Grid Rules"). This argument is without merit because, as explained above, the ALJ had substantial evidence for her determination that Santiago was able to communicate in English within the meaning of the applicable regulations. See 20 C.F.R. §§ 404.1564, 416.964. Accordingly, Santiago does not qualify as disabled under either Grid Rule.[10]

### V. Conclusion

For the foregoing reasons, and after careful consideration of all of the parties' arguments, Santiago's request for review is DENIED and his Complaint is DISMISSED with prejudice.

An appropriate Order follows.

O:\CIVIL 11-12\11-3650 Santiago v. Astrue\Santiago - Memo SS Appeal.wpd

---

[10] Santiago is not disabled under Rule 202.09 for the additional reason that he was not an individual "closely approaching advanced age"—that is, between age 50 and 54—either at the alleged onset date or at the time that the ALJ issued her written opinion. See 20 C.F.R. § 404.1563(d).